FILED 09 AUG 25 13:21 USDC-LAE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEMETRI DANIELS | CIVIL ACTION |
| VERSUS | NO: 09-5876 |
| COMMCARE LOUISIANA d/b/a GREENBRIAR NURSING CONVALESCENT CENTER | SECT. J MAG. 3<br>SECTION: " " ( ) |
| | JURY TRIAL REQUESTED |

FILED: _____     _____

## COMPLAINT

TO THE HONORABLE, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, AND THE JUDGES THEREOF:

The Complaint of Demetri Daniels, through undersigned counsel, represents as follows:

1.

Demetri Daniels is of full age of majority, a resident of Virginia, and the succession representative and sole heir of Ethel Brumfield.

2.

Made defendant herein is CommCare Louisiana, upon information and belief, a Louisiana corporation, which at all relevant times, owned and operated Greenbriar Nursing Convalescent Center ("Greenbriar), a nursing home located at 505 Robert Road, Slidell, Louisiana 70458, within the jurisdiction of this Honorable Court.

3.

At all material times, Ethel Brumfield was a resident of Greenbriar.

4.

At all material times, defendant employed the nurses and staff who attended to Ethel Brumfield during her residency at Greenbriar.

Fee 350
✓ Process S(USms)
X Dktd _____
___ CtRmDep _____
___ Doc. No. _____

5.

On December 5, 2005, Ethel Brumfield, then 95 years old, was accepted at Greenbriar.

6.

On the date of admission, Dr. Michael A. Braxton, performed a physical examination of Ms. Brumfield. He documented that Ms. Brumfield was an African American woman who was 95 years old at the time, was 5'4" tall, weighed 105 lbs., and was in "generally good health." He further noted that Ms. Brumfield was non-ambulatory/wheelchair bound.

7.

On the date of admission, the Greenbriar nursing staff documented a physician's order to monitor Ms. Brumfield's skin integrity.

8.

On the date of admission, the Greenbriar nursing staff formulated a "Care Plan" for Ms. Brumfield, which provided that the nursing staff would monitor Ms. Brumfield's skin integrity daily. This requirement of her "Care Plan" remained in effect at all times through June 2, 2006, when she was transferred from Greenbriar to Northshore Regional Medical Center.

9.

During the months of December, 2005, January, 2006 and February, 2006, in accordance with her "Care Plan", the Greenbriar nursing staff documented the performance of daily skin assessments in its "Treatment Record" for Ms. Brumfield, noting at each such assessment that her skin was found to be intact.

10.

During the month of March, 2006, Greenbriar nursing staff continued to perform daily skin assessments at most times, although they did neglect to perform a skin assessment on March 26 and March 28. At each skin assessment performed during the month of March, the nursing staff noted that Ms. Brumfield's skin was intact.

11.

In April, 2006, the Greenbriar nursing staff stopped inspecting Ms. Brumfield's skin on a daily basis, and instead began to schedule only "Weekly Body Audits" for this period.

12.

The Greenbriar nursing staff, however, failed to consistently monitor Ms. Brumfield's skin integrity, even at this reduced frequency.

13.

In May of 2006, the Greenbriar's nursing staff failed to perform any of the "Weekly Body Audits" and there is no indication that any skin assessments were performed during the entirety of the month of May, 2006, or through June 2, 2006, when Ms. Brumfield was transferred to Northshore Regional Medical Center via ambulance.

14.

On June 2, 2006, at 7:15 p.m., a Greenbriar nurse noted that she was "summoned to room by certified nurse assistant, D. Dumas, who was undressing resident for bed and discovered wound to left shin. Wound large, superficial, measuring 6cm x 4cm, with 3.5cm x 3cm necrotic area. Serous drainage-no odor. Entire left leg with 4+ pitting edema-warm and tender to touch. Area cleaned and dressed…call placed to Dr. Lucas."

15.

The nursing note at 8:00 p.m. on June 2 indicates that there was no response from the physician and a call was placed to plaintiff herein, who gave permission to send Ms. Brumfield to the emergency room for evaluation.

16.

On June 2, 2006, Ms. Brumfield was taken to Northshore Regional Medical Center via ambulance, seen in the emergency room and diagnosed with cellulitis of her left leg and admitted for in-patient treatment.

17.

Infectious disease physician, Dr. Camille Bitar, consulted on Ms. Brumfield's case. Dr. Bitar noted swelling and erythema to Ms. Brumfield's left leg, along with the presence of ulceration mostly at the lateral aspect of the left leg, along with some surrounding erythema. Dr. Bitar noted soft tissue infection and cellulitis involving Ms. Brumfield's left lower extremity, and persistent ulceration. Dr. Bitar further noted that the patient complained of pain to the affected area and recommended IV antibiotic therapy.

18.

On her 6th hospital day, June 8, 2006, despite an aggressive regimen of IV antibiotic therapy and local wound care, Dr. Bitar noted that the ulceration to Ms. Brumfield's leg was not healing. Dr. Bitar determined that Ms. Brumfield required continued IV antibiotic therapy and local wound care. A central intravenous line was inserted on June 8, due to her need for prolonged antibiotic therapy, and, on June 9, upon referral by Dr. Bitar, Ms. Brumfield was transferred from Northshore Regional Medical Center to Gulf States LTAC of Washington and St. Tammany to receive ongoing treatment.

19.

On June 9, 2006, Ms. Brumfield was transferred and admitted to Gulf States LTAC to receive continued IV antibiotic therapy and local wound care. She remained there under treatment until July 5, 2006.

20.

On July 5, 2006, Ms. Brumfield was transferred to Guest House of Slidell to continue to receive wound care for the non-healing ulcer to her left lower extremity at this facility.

21.

At Guest House, the original left shin ulcer was finally noted to have healed on September 28, 2006. By that time, however, Ms. Brumfield has become significantly debilitated. Ms. Brumfield continued to decline and passed away on February 28, 2007.

22.

Defendant, through its employees, nurses and staff, were negligent and breached the duty of care owed to Ethel Brumfield, including, but not limited to, failing to timely and adequately assess and document Ms. Brumfield's skin integrity and failing to timely and adequately provide appropriate care with respect to Ms. Brumfield's skin, despite physician's order and a Care Plan for daily assessment of same.

23.

Plaintiff maintains that the acts of commission and/or omission of defendant, through its employees, nurses and staff, constitute negligence and/or deviations from the standard of care, and as a proximate result of their negligence, defendant caused or substantially contributed to Ethel Brumfield developing serious and painful skin breakdown, infection and cellulitis, which required significant, prolonged and painful medical treatment.

24.

As a result, defendant is liable for Ms. Brumfield's preterminal pain and suffering and medical expenses, for which plaintiff is entitled to recover at least $500,000.

25.

This matter was considered by a medical review panel on May 14, 2009 and the medical review panel opinion was mailed by certified mail as provided by statute on June 17, 2009 and received by plaintiff's counsel on June 19, 2009.

26.

The medical review panel found that Greenbriar failed to comply with the appropriate standard of care as charged in the complaint and two of the three members of the medical review panel concluded that the conduct complained of was a factor of the resultant damages. The third member of the medical review panel was unable to conclude whether or not the conduct complained of was a factor of the resultant damages. Attached hereto as Exhibit "1" is a copy of the medical review panel Opinion and Reasons.

27.

Demetri Daniels, the succession representative and sole heir of the late Ethel Brumfield, brings this action for damages and any further relief as provided by Louisiana law.

28.

Jurisdiction is based upon the diversity of citizenship of the parties and an amount in controversy exceeding $75,000, exclusive of costs and interest, 28 U.S.C. §1332, and plaintiff prays for trial by jury.

WHEREFORE, plaintiff prays that this Complaint be filed and that defendant, CommCare Louisiana d/b/a Greenbriar Nursing Convalescent Center, be cited to appear and answer same. and after all legal delays and due proceedings had there be judgment herein in favor of plaintiff and against defendant, CommCare Louisiana d/b/a Greenbriar Nursing Convalescent Center, in the amount of $500,000 or such greater sum as may be appropriate, plus interest from the date that the medical review panel proceeding was initiated, May 21, 2007 until paid, for all costs of these proceedings, trial by jury and all general and equitable relief.

Respectfully submitted,

David A. Abramson (#21435)
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, Louisiana 70130
Telephone: (504) 588-1500
Facsimile: (504) 588-1514
abramson@lksalaw.com
Attorneys for plaintiff

**PLEASE SERVE SUMMONS AND COMPLAINT:**
CommCare Louisiana d/b/a Greenbriar Nursing Convalescent Center
through its registered agent for service of process:
John A. Stassi, II
2755 Pan American Life Center
601 Poydras Street
New Orleans, LA 70130